**EXHIBIT A**

exhibit a

**EXHIBIT A**

taxes by less than the House bill would. There is little reason to cap taxes on "pass-through" firms, whose profits appear on the tax returns of individuals, at 25%. Republicans pretend these are all small businesses, but they include real-estate developers and other large firms. Three-fifths of their income flows to the top 1% of earners.

Our second aim would be to make the reform less regressive. In addition to its giveaways to owners of pass-throughs, the House bill would abolish the estate (inheritance) tax. This levy already applies only to estates worth more than about $5.5m; with inequality high and social mobility falling, cutting taxes for rich heirs should be reformers' lowest priority. We would keep the estate tax; and we would remove entirely the carried-interest deduction, beloved of hedge funds and private-equity firms (see page 56).

The bill also contains a time-bomb for the middle class. It scraps the personal exemption, which reduces a household's taxable income in accordance with its size. In its stead, there is a flat $300 tax credit for adults and a big boost to child tax credit. But the adult credit would phase out, and the child credit is not fully indexed to inflation. As a result, the bill would eventually raise taxes for many low- and middle-income households, compared with current law. If the personal exemption is scrapped, its replacements should be made permanent.

The final change would be to make the bill more friendly to growth. Not adding to government debt would help. So would a greater emphasis on investment "expensing". This allows firms to knock the cost of investments off their taxable profits in the year they are made, rather than as their assets depreciate. It is the best way to reform business taxes so as to encourage investment. Unlike cuts to the corporate-tax rate, expensing does not provide windfall gains to the owners of existing capital, or to firms with market power. In the House bill expensing lasts for five years. It should be permanent.

### GOPsmacking

In today's debate it can seem as if Republicans have forgotten the purpose of tax reform. Some say that only deficit-financed tax cuts can boost growth—a remarkable claim from a party supposedly devoted to supply-side economics. A badly designed tax code reduces growth by distorting incentives. Untangling it would help the economy regardless of the effect on spending. That is why tax reform is worth pursuing in the first place, and why the House bill could be so much better. ■

---

The global spread of plea-bargaining

# The shadow justice system

**Plea bargains save time and money, but are too easily abused**



THE elements that make up a criminal-justice system are familiar from a thousand courtroom dramas. Detectives interview witnesses and examine crime scenes. Forensic scientists coax secrets from bloodstains and cigarette ash. Judges and juries weigh the facts and pronounce on guilt and innocence.

But in many countries, behind this system lies a quicker, rougher one. It is plea-bargaining, in which prosecutors press lesser charges or ask for a lighter sentence in return for a defendant pleading guilty or incriminating others. Long crucial to the operation of American justice, this shadow system is now going global (see page 53). One study of 90 countries found that just 19 permitted plea bargains in 1990. Now 66 do. In many countries, including England and Australia, pleas now account for a majority of guilty verdicts. In American federal courts the share is close to 100%.

The result sometimes bears only a passing resemblance to justice. Prosecutors may heap charge upon charge so that defendants risk decades behind bars if they decide to face trial. Even when cases are flimsy, defendants may see little option but to plead guilty. A defence lawyer who offers a witness $1 to exonerate his client commits bribery. A prosecutor who threatens the same witness with prison if he does not give damning evidence is just doing his job. Is that fair?

The fiction behind plea-bargaining is that innocent people will stand fast and trust the courts to exonerate them. The truth is that many will not. Of the Americans convicted of rape or murder and later cleared, a sizeable share had pleaded guilty. Pre-trial detention increases the risk: people may say anything to get out of jail. Studies by psychologists have shown that students will confess to academic transgressions they did not commit to avoid even minor penalties.

Plea-bargaining is too useful to be abandoned. With no incentive to plead guilty, even criminals caught red-handed would opt for a trial, since a tiny chance of getting off is better than none. Justice would be slower and pricier. More victims would have to relive their trauma in the witness box. And it would remove an important weapon in the fight against organised crime, namely the ability to reward minor figures for helping to take down kingpins. But if plea bargains are to serve justice, not subvert it, they must be subject to clear constraints.

To start with only modest incentives should be offered. Small reductions in sentences are enough to induce guilty defendants to waive trial. But as discounts become more generous, false confessions become more common. And incentives for incriminating others should come with strict conditions. Brazil shows the way. Its recent extension of plea-bargaining has enabled prosecutors to go after corrupt politicians. But it guards against perjury by requiring supporting evidence for statements incriminating others and by making it clear that if a defendant is caught in a lie, the deal is off.

### A plea for common sense

Above all, plea bargains must not be allowed to warp criminal-justice systems. In countries such as America where prosecutors have broad leeway, crimes are often loosely defined and sentences harsh. This is no accident: these are the tools used to browbeat defendants into guilty pleas. When few cases are tested in trials, police may become sloppy, lawyers lazy and judges capricious. When the innocent are bullied into trading away their day in court, justice is weakened for everyone. ■